Raymond Joseph **ECHLIN**, Petitioner,

v.

Robert **LECUREUX**, Respondent.

Ronald Richard **BISHOP**, Petitioner,

v.

Henry **GRAYSON**, Respondent.

Civ. A. No. 90–CV–71694–DT.

United States District Court,
E.D. Michigan, S.D.

July 31, 1992.

**516**

Carl Ziemba, Detroit, Mich., for Echlin.

Frederick D. Doherty, Jr. Lansing, Mich., for Bishop.

K. Davison Hunter, Lansing, Mich., for respondents.

## OPINION AND ORDER

COHN, District Judge.

Petitioners Raymond Joseph Echlin and Ronald Richard Bishop, who are presently confined in Michigan state correctional facilities, have filed petitions for the writ of habeas corpus under 28 U.S.C. § 2254. In 1982, petitioners and one other codefendant were convicted of conspiracy to commit first-degree murder and associated criminal acts.

Petitioners allege that, during trial, they were deprived of their rights to an impartial jury and to equal protection of the law under the Sixth and Fourteenth Amendments to the United States Constitution. More specifically, petitioners, who are white, complain that the prosecution exercised nineteen (19) of twenty-one (21) peremptory challenges against white venirepersons. Additionally, petitioners allege that their rights to due process, a fair trial, and an impartial jury were violated when the jury venire was exposed to prejudicial newspaper articles about them. For the reasons that follow, the Court will grant writs of habeas corpus unless the State retries petitioners.

### I. *State Court Procedural History*

Petitioners were convicted by a jury in Recorder's Court for the City of Detroit, Michigan. Their convictions arose from two shootings directed at George Lester Stewart, a black man. One shooting occurred at the Sky Club Bar; the other shooting occurred at Stewart's home where he lived with a white woman and her child. The Wayne County assistant prosecutor who prosecuted the case claimed at trial that petitioners were somehow affiliated with the Klu Klux Klan (KKK).

The trial court sentenced petitioners to imprisonment as follows: mandatory life without parole for conspiracy to commit first-degree murder;[1] six (6) years and

---

**1.** Persons convicted of conspiracy to commit first-degree murder are now eligible for parole under *People v. Jahner,* 433 Mich. 490, 446

eight (8) months to ten (10) years for assault with intent to do great bodily harm less than murder; and twenty-five (25) to forty (40) years for assault with intent to commit murder. Petitioners also received a consecutive term of two (2) years for their felony firearm convictions.

In an unreported decision, the Michigan Court of Appeals consolidated petitioners' direct appeals and affirmed the convictions. *People v. Echlin*, No. 81885, *People v. Bishop*, No. 82407 (July 3, 1986). The Michigan Supreme Court in an unreported decision vacated the judgment of the Court of Appeals and remanded the case for reconsideration in light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *People v. Echlin*, No. 79109, *People v. Bishop*, No. 79119 (February 24, 1987). The Court of Appeals then remanded the case to the trial court for a hearing on whether petitioners could establish a *prima facie* case of purposeful discrimination by the prosecution in its use of peremptory strikes to eliminate white jurors. *People v. Echlin*, No. 98791, *People v. Bishop*, No. 98789 (on remand) (June 17, 1987).

The trial court held oral arguments and, on August 12, 1988, issued a decision. The trial court found, in part, that the venire and the jury reflected a cross section of the population of the City of Detroit. *See* Trial Court's Findings and Determinations Pursuant to Court of Appeals Order of Remand (Trial Court's Findings) at 2. The trial court concluded that petitioners had been unable to establish a *prima facie* case of purposeful discriminatory use of peremptory challenges to exclude white jurors. *See id.* at 5.

Subsequently, the Court of Appeals found no abuse of discretion by the trial judge and once again affirmed the convictions in an unreported decision. *People v. Echlin*, No. 98791, *People v. Bishop*, No. 98789 (after remand) (February 15, 1989). The Michigan Supreme Court in a standard order denied petitioner's requests for fur-

N.W.2d 151 (1989), which has retroactive appli-

ther review. *People v. Echlin*, No. 86179, *People v. Bishop*, No. 85607 (January 9, 1990).

On June 15, 1990, and June 25, 1991, petitioners filed their respective applications for habeas relief in this Court. State court remedies concerning the issues raised in the habeas petitions have been exhausted. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## II. *Federal Court Procedural History*

This Court held oral arguments in petitioner Echlin's case on July 3, 1991. The Court concluded that Echlin had established a *prima facie* case of purposeful discrimination under *Batson*. *See* Memorandum Opinion and Order dated August 6, 1991 (Appendix A). Accordingly, on August 6, 1991, the Court began an evidentiary hearing to provide the State with an opportunity to establish neutral reasons for the assistant prosecutor's peremptory challenges against the white venirepersons listed in the August 6, 1991, memorandum opinion and order.

Subsequently, the Court consolidated petitioners' cases and appointed counsel to represent Bishop. The Court resumed the evidentiary hearing on February 19, 20, and 24, 1992, and on April 8 and 9, 1992. Following the evidentiary hearing, respondents moved to dismiss the petitions for lack of standing. The Court determined that petitioners have standing under *Batson* and denied the motion to dismiss. *See* Memorandum Opinion and Order dated July 10, 1992 (Appendix B). The case is now ready for final disposition.

## III. *Use of Peremptory Challenges*

Petitioners' first claim is that they were deprived of their federal constitutional rights when the assistant prosecutor exercised nineteen (19) of twenty-one (21) peremptory challenges against white venirepersons. Petitioners rely on their rights

cation. *Id.* at 493, 504, 446 N.W.2d 151.

under the Sixth and Fourteenth Amendments to the United States Constitution.

## A. Sixth Amendment Claim

■ To support their first claim, petitioners rely on their right to an impartial jury under the Sixth Amendment to the United States Constitution. The United States Supreme Court, however, has held that "the sixth amendment's fair cross-section requirement for jury composition does not govern the use of peremptory challenges." *United States v. Peete*, 919 F.2d 1168, 1178 (6th Cir.1990) (citing *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990)). *Holland* did not establish a new rule under *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989), and therefore may be applied retroactively. *Bell v. Baker*, 954 F.2d 400 (6th Cir.1992). Accordingly, petitioners' claim under the Sixth Amendment fails.

## B. Fourteenth Amendment Claim [2]

Petitioners also rely on their right to equal protection of the law under the Fourteenth Amendment to the United States Constitution to support their *Batson* claim.[3] "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race...." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719.

In *Batson*, the Supreme Court
> outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause.... First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a

race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, —— U.S. ——, —— – ——, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395 (1991) (citing *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723).

### 1. *Review of State Court Findings*

■ The trial court took the first step in analyzing petitioners' claim, finding that they had not made a *prima facie* showing of race discrimination under *Batson*. Ordinarily a reviewing court will accord great deference to state court findings. 28 U.S.C. § 2254(d); *Hernandez v. New York*, —— U.S. at ——, 111 S.Ct. at 1869; *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. The Court declines to do so here for the following reasons.

■ First, there is no support in the record for the conclusions of the trial court and the Michigan Court of Appeals regarding the racial mix of the City of Detroit. The trial court relied on the representations of the parties and found that the venire and the jury reflected a cross section of the population of the City of Detroit. *See* Trial Court's Findings at 2. The Court of Appeals on remand likewise found that, if seventy (70%) to eighty (80%) percent of jury venires in the City of Detroit were black, the impaneled jury apparently mirrored the racial composition of the venire. The Court of Appeals also concluded that three (3) white jurors in an initial panel of fourteen (14) jurors was not disproportionate to the racial composition of the venire. *See People v. Echlin*, No. 98791, *People v. Bishop*, No. 98789 (on remand) (June 17, 1987).

---

**2.** For the most recent academic discussion about the relationship between the federal Constitution, the Supreme Court, and state courts concerning jury discrimination and the Equal Protection Clause, *see* Charles J. Ogletree, "Supreme Court Jury Discrimination Cases and State Court Compliance, Resistance, and Innovation" in *Toward a Usable Past: Liberty Under State Constitutions*, 339 (Paul Finkelman & Stephen E. Gottlieb eds., 1991).

**3.** *Batson* is retroactive here because petitioners' case was not final when *Batson* was decided. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). *See* the Court's Memorandum Opinion and Order of July 10, 1992, for a more complete discussion of this issue.

As this Court has previously noted,[4] however: (1) the racial mix of the City of Detroit in 1982 was approximately sixty-three percent (63%) black and thirty-seven percent (37%) white;[5] (2) the racial composition of the jury as impaneled consisted of eleven (11) blacks and three (3) whites, or seventy-eight and one-half percent (78.5%) blacks and twenty-one and one-half percent (21.5%) whites;[6] and (3) the assistant prosecutor exercised nineteen (19) or ninety percent (90%) of his challenges against whites and two (2) or ten percent (10%) of his challenges against blacks.

The percentage of whites in the City of Detroit in 1982 was greater than the state courts recognized. The state courts therefore erred in their determination of the racial composition of the community.[7]

Second, the Court disagrees with the trial court's assessment of petitioners' claim. The trial court concluded that petitioners had not made out a *prima facie* case of race discrimination. The statistics relied on above, however, clearly suggest an inference of discrimination. *See United States v. Sangineto–Miranda*, 859 F.2d 1501, 1521–1522 (6th Cir.1988) (holding that a jury with a significantly smaller percentage of a racial group than exists in the venire is a factor pointing toward an inference of discrimination); *United States v. Alvarado*, 923 F.2d 253, 255 (2nd Cir.1991) (holding that a rate of challenges significantly higher than the percentage of the racial group in the venire supports a statistical inference of discrimination).

Furthermore, the inclusion of three (3) whites on the jury and the failure of the assistant prosecutor to use twenty-four (24) of his peremptory strikes is not dispositive. A savvy prosecutor will not eliminate all members of the disputed race to avoid the appearance of discrimination. *But see United States v. Sangineto–Miranda*, 859 F.2d at 1522 (holding that the presence of minority members on a jury when the prosecution did not use all of its peremptory challenges is a factor tending to refute discrimination).

Third, the trial court never reached step two of the analysis of petitioners' *Batson* claim because it concluded that petitioners had not established a *prima facie* case of discrimination. Accordingly, the trial court never held an evidentiary hearing on petitioners' claim. In contrast, this Court proceeded to the burden-shifting stage and afforded petitioners a full evidentiary hearing.

Fourth, the trial court relied on irrelevant factors such as the assistant prosecutor's demeanor, manner, and competence and the reputation of the Wayne County Prosecutor's Office for being fair, ethical, and honorable. *See* Trial Court's Findings at 4. Mere "affirmations of good faith," however, are insufficient to rebut a *prima facie* case of racial discrimination in the selection of jurors. *Jefferson v. Morgan*, 962 F.2d 1185, 1191 (6th Cir.1992). The credibility of the assistant prosecutor's explanation for his peremptory challenges is what is pertinent, not the credibility of the assistant prosecutor. *Hernandez v. New York*, —— U.S. at —— – ——, 111 S.Ct. at 1969–1970.

Fifth, the trial court's responses, or lack of a response, are telling examples of disregard for petitioners' constitutional rights. On November 5, 1981, defense counsel accused the assistant prosecutor of having used all eleven (11) of his peremptory strikes to date against white jurors. T VII at 23–25.[8] The assistant prosecutor did not

---

4. *See* Memorandum Opinion and Order dated August 6, 1991.

5. *See* U.S. Department of Commerce, Bureau of the Census, *Statistical Abstract of the United States: 1990* at 34 (110th edition), Washington, D.C., (1990).

6. At the evidentiary hearing, the assistant prosecutor testified that the composition of the original panel was twelve (12) blacks and two (2) whites and that the deliberating jury consisted of ten (10) blacks and two (2) whites.

7. The state courts did not cite any authority for the racial percentages they found. The respondents do not challenge the Court's finding that the state courts erred.

8. T refers to the *voir dire* transcript. Volumes II–VI are consecutively paginated from 250A–1500; volume VII, which was prepared by a

respond to the accusation, and the trial court indicated that it was not paying much attention to "the color game." T VII at 23–32. The trial court then listened to defense counsel's additional concerns about unrelated matters and ordered a recess in the proceedings. T VII at 25–32. The challenge to the prosecution's alleged systematic exclusion of white venirepersons was not resolved, and a new venireperson was called after the recess. T VII at 32.

Defense counsel again objected to the assistant prosecutor's strikes against white venirepersons at the close of *voir dire.* T VIII at 1605–1607. The trial court's response was, "You can, they can't?" T VIII at 1611. This comment suggests that the trial court found the assistant prosecutor's peremptory strikes acceptable, assuming that defense counsel was using a similar tactic to exclude blacks.[9] *See* T VIII at 1607–1611. The trial court concluded that "[t]he presumption of the proper use of peremptory challenges [had] not been rebutted." T VIII at 1638.

Finally, the state appellate courts also gave short shrift to petitioners' Batson claim. The Michigan Court of Appeals originally concluded merely that *Batson* did not apply retroactively and, even if it did, petitioners had failed to establish a *prima facie* case of discrimination. *See People v. Echlin,* No. 81885, *People v. Bishop,* No. 82407 at 15–16 (July 3, 1986).

On remand from the Michigan Supreme Court, the Court of Appeals concluded that the impaneled jury appeared to mirror the racial composition of the venire. The Court of Appeals held that the issue of whether a *prima facie* case had been established was a factual question to be determined by the trial court on consideration of all relevant circumstances. Accordingly, the Court of Appeals remanded the case to the trial court for the requisite hearing. *See People*

*v. Echlin,* No. 98791, *People v. Bishop,* No. 98789 at 3 (on remand) (June 17, 1987).

Following the trial court's decision on remand, the Court of Appeals deferred to the lower court's findings and affirmed the convictions. The Court of Appeals held that the trial court did not abuse its discretion when determining that petitioners had not established a *prima facie* case. *See People v. Echlin,* No. 98791, *People v. Bishop,* 98789 at 5 (after remand) (February 15, 1989). The Michigan Supreme Court never reviewed petitioners' claims on the merits. *See People v. Echlin,* No. 79109, *People v. Bishop,* No. 79119 (February 24, 1987); *People v. Echlin,* No. 86179, *People v. Bishop,* No. 85607 (January 9, 1990). For all of the foregoing reasons, the Court does not defer to the state court findings on petitioners' claim under *Batson.*[10]

### 2. *Review of the Assistant Prosecutor's Explanations*

■ This Court has already completed steps one and two of the analysis of the *Batson* claim. First, the Court reviewed petitioners' *prima facie* case; then the Court held an evidentiary hearing to provide an opportunity for the State to establish race-neutral explanations for its peremptory strikes. The Court must now determine whether petitioners have carried their burden of proving purposeful discrimination. To resolve this question, the Court must analyze the assistant prosecutor's explanations for striking white venirepersons from the jury panel.

"[T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Nevertheless,

the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the as-

---

different court reporter, is separately paginated from 1–342; and volume VIII consists of pages 1500A–1750.

**9.** If that was the assumption, under recent case law, the trial court was in error. *See Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

**10.** Whatever one's views in the current debate over federal habeas corpus as an unwarranted intrusion on state sovereignty and as an excessive use of federal judicial time, this case represents the paradigm for the need of federal court guardianship of the Constitution.

sumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' ... The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried.

*Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24 (footnote omitted). A neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez v. New York,* —— U.S. at ——, 111 S.Ct. at 1866.

'[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [classification] bears more heavily on one race than another.' If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.

*Id.* at ——, 111 S.Ct. at 1868 (internal citation omitted). Findings on the issue of discriminatory intent

will 'largely turn on evaluation of credibility.' In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.

. . . .

The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review.

*Id.* at ——, 111 S.Ct. at 1869–1870 (quoting *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21).

An explanation for a particular challenge need not necessarily be pigeon-holed as wholly acceptable or wholly unacceptable. The relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent.

*United States v. Alvarado,* 923 F.2d at 256. Exclusion of one juror on the basis of race is sufficient to require a new trial under *Batson. Splunge v. Clark,* 960 F.2d 705, 709 (7th Cir.1992); *Harrison v. Ryan,* 909 F.2d 84, 88 (3rd Cir.1990), *cert. denied sub nom Castille v. Harrison,* —— U.S. ——, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990); *see also United States v. Sangineto-Miranda,* 859 F.2d at 1520.

At the evidentiary hearing,[11] the assistant state prosecutor offered multiple, facially-neutral reasons for exercising his peremptory challenges during petitioners' trial. He has consistently denied exercising any challenges based on race.

Petitioners point to black venirepersons who shared the same characteristics as the stricken white venirepersons, but nevertheless were not challenged by the assistant prosecutor. *See* Petitioners' Second Amended Global Characteristics (Appendix C). Petitioners contend that the assistant prosecutor's explanations are pretextual.

The Court agrees with petitioners. The assistant prosecutor's explanations are not credible; they are merely pretextual and a facile effort to disguise racially discriminatory challenges. This finding is obvious

---

**11.** Following the Memorandum Opinion and Order of August 6, 1991, which called for an explanation of the reasons for striking named white venirepersons, the respondents filed their initial Offer of Proof. Petitioners subsequently submitted an Amended Global Characteristics and a Second Amended Global Characteristics. The evidentiary hearing, for the most part, consisted of the parties' examination and cross examination of the assistant prosecutor based on these documents. Following the close of the evidentiary hearing, respondents filed an Amended Offer of Proof and Response to Second Amended Global Characteristics (Amended Offer of Proof). Post hearing briefs were not filed.

from the strikes against the following white venirepersons.[12]

### (a) *Martha Abbott*

In the assistant prosecutor's Amended Offer of Proof, he says that he struck venireperson Martha Abbott solely because she learned from local newspapers that petitioners had pleaded guilty in federal court. This explanation is not credible because, as the assistant prosecutor admitted at the evidentiary hearing on February 24, 1992, the contents of the newspaper article became common knowledge during *voir dire.* Thus, Abbott was by no means the only person who was privy to that information.

### (b) *Nancy Kozembo*

In his Amended Offer of Proof, the assistant prosecutor says that he struck Nancy Kozembo because she was a victim of both armed robbery and numerous incidents related to her car. The assistant prosecutor relied in large part on the fact that Kozembo's aunt had been murdered and her uncle had been apprehended for the murder. The transcript of trial, however, reveals that the robbery occurred nine (9) years earlier, and Kozembo was satisfied with the way police handled it. T IV at 798. When defense counsel asked Kozembo whether her aunt's murder eight (8) years earlier would have a present negative impact on her, she responded, "No, I don't think so." T IV at 799. Immediately after making this response, Kozembo assured counsel that she was aware of the charges against petitioners. T IV at 799–800.

Two (2) black jurors sat on the jury even though they had been victims of robberies or car thefts. T V at 1173 (Rene Kennerly); T VIII at 1579–1580 (Sandra Warren). Furthermore, although Kozembo was seated on October 29, 1991, the assistant prosecutor did not strike her until November 4,

1981, after foregoing the opportunity to strike her numerous times. T IV at 796 (seated); T VI at 1431 (struck).

### (c) *John Renwick*

The assistant prosecutor says that he struck John Renwick because Renwick used to live in the area of the crime, felt negatively about the KKK, and gave minimal responses. However, at least two (2) black venirepersons continued to sit on the jury even though they acknowledged some familiarity with the crime scene. T VII at 1529 (Beatrice Mitchell); T VII at 83 (Karen Peters). Additionally, eight (8) black venirepersons who had negative feelings about the KKK sat on the jury. T V at 1061 (Ernestine Barnett); T VII at 271 (Rennell Bright); T V at 1177 (Sandra Hare); T V at 1174 (Rene Kennerly); T VIII at 1503 (Beatrice Mitchell); T VII at 224 (Maxine Ogburn); T VII at 81 (Karen Peters); T VIII at 1587 (Sandra Warren). Finally, two (2) black jurors sat on the jury even though they responded "uh-huh" and gave brief answers to questions. T VII at 301–303, 307–308 (Deborah Gladney); T VII at 1519–1520 (Beatrice Mitchell).

It is also noteworthy that Renwick was seated on November 2, 1981, T V at 1057, and the assistant prosecutor expressed his satisfaction with the jury while Renwick was still on the panel. T V at 1214. Immediately thereafter, defense counsel struck Mrs. Hughes, a black venireperson. T V at 1215. The assistant prosecutor then struck Renwick even though only Hughes' replacement had been added to the panel and no questions had been directed to the panel or the new venireperson in the interim. T V at 1215.[13]

### (d) *Lisa Rezzonica*

The assistant prosecutor offered several reasons for striking Lisa Rezzonica, some

---

**12.** The *voir dire* transcripts do not reflect the race of the venirepersons. The assistant prosecutor testified at the evidentiary hearing that he designated white venirepersons on his jury chart by placing a "W" after their names; those venirepersons without a "W" after their names were not white. *See* Appendix D.

**13.** The assistant prosecutor also exercised five (5) peremptory strikes against white venireper-

sons after all of the defense attorneys had exhausted their peremptory strikes. *See* T VII at 310 (defense counsel exercises last peremptory challenge); T VII at 310 (Myrna Violet subsequently struck); T VII at 314 (Emma Mahieu struck); T VII at 338 (Martha Hupford struck); T VIII at 1537 (Sue Hale struck); T VIII at 1572 (Beverly English struck).

of which included her age, marital status, occupation, opinions about the KKK, guns, and the background of witnesses, admitted stubbornness, and "uh-huh" responses. Rezzonica was seated on October 29, 1981. T III at 709. Despite his many reasons for striking Rezzonica and, by his own admission, the assistant prosecutor exercised six (6) peremptory challenges and passed twenty (20) times before striking Rezzonica on November 4, 1981. T VI at 1336; *see also* Amended Offer of Proof at 8.

### (e) *Myrna Violet*

The assistant prosecutor says in his Amended Offer of Proof that the sole reason he struck Myrna Violet was because she allegedly was bothered by the thought of children being involved with the KKK. The assistant prosecutor interpreted this to suggest a bias for the youth of petitioners. Petitioners, however, were adults at the time of trial. Petitioner Bishop, in fact, reminded one venireperson of her son who apparently was between the ages of twenty (20) and twenty-five (25). T VII at 311. Furthermore, it is not at all clear, as suggested by the assistant prosecutor, that Violet's comment, "It would affect me", meant that serving on petitioners' jury would bother her. T VII at 300, 303–307.

### 3. *Findings*

The Court finds from the foregoing circumstantial evidence that the assistant prosecutor purposefully used peremptory challenges to shape the composition of the jury, that is, to place blacks on the impaneled jury. In some instances, the assistant prosecutor's reasons simply were not meritorious. In other instances, his reasons were not credible because he delayed making the peremptory strikes until long after the factual predicate for his strike was known to him. In still other instances, the reasons given for the strikes against white venirepersons existed in black venirepersons who sat on the jury. There was no significant difference between the white venirepersons who were struck and the black venirepersons who remained seated. These explanations, therefore, are not credible. Moreover, the assistant prosecutor's use of the letter "W" to indicate the race of

white venirepersons, *see* note 8, *supra,* is a strong indication that he was not only conscious but preoccupied with the race of the venirepersons. The Court concludes that race was a significant factor in the assistant prosecutor's part in jury selection.

Additionally, at the evidentiary hearing, the Court asked the assistant prosecutor what his overall strategy had been during *voir dire.* The assistant prosecutor responded that his only strategy had been to get a fair and impartial jury. Given the nature of his peremptory challenges, the differences between the complaining witness and petitioners, and the assistant prosecutor's belief that the defense had tried to inflame the jury, this response indicates that the assistant prosecutor was not a credible witness. To repeat, the Court is of the firm opinion that the assistant prosecutor struck white venirepersons based on their race.

### 4. *Harmless Error Analysis*

The Supreme Court has held that "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review." *Vasquez v. Hillery,* 474 U.S. 254, 263–264, 106 S.Ct. 617, 623–24, 88 L.Ed.2d 598 (1986); *see also Jefferson v. Morgan,* 962 F.2d at 1192 (holding that "*Vasquez* remains good law"). *Vasquez* suggests that the same is true when a petit jury is selected using discriminatory criteria. *See Vasquez,* 474 U.S. at 263, 106 S.Ct. at 623; *United States v. Thompson,* 827 F.2d 1254, 1261 (9th Cir. 1987). Accordingly, it is not necessary for the Court to engage in a harmless-error review.

### IV. *Pretrial Publicity*

Petitioners' last claim is that they were deprived of their constitutional rights to due process, a fair trial, and an impartial jury when the jury venire was exposed to prejudicial newspaper articles about them. Specifically, petitioners contend that, during jury selection, the major newspapers in Detroit mentioned their (petitioners') previous guilty pleas in federal court on civil rights charges arising from the same inci-

dents. Because it is unlikely that this alleged error will occur at a new trial, the Court will not decide this claim. *See Akins v. Cardwell*, 500 F.2d 47 (9th Cir.1974).

## V. *Conclusion*

Petitioners have met their burden of establishing purposeful discrimination by the Wayne County assistant prosecutor in his use of peremptory strikes against white venirepersons. Accordingly, the Court will grant writs of habeas corpus unless the Attorney General for the State of Michigan[14] agrees to a retrial of petitioners within ninety (90) days of the date of this order. Petitioner Echlin's motion for summary judgment is denied as moot.

So ordered.

## APPENDIX A

### MEMORANDUM OPINION AND ORDER

Petitioner Raymond Joseph Echlin, presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1982, a jury in the Recorder's Court of Detroit, Michigan convicted petitioner and two codefendants of conspiracy to commit murder and associated criminal acts.

On July 3, 1991, this Court held oral arguments on petitioner's claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court framed the issue as follows: "whether, considering all relevant circumstances, Petitioner has met his burden of making a sufficient showing to raise an inference that the prosecutor used his peremptory challenges to exclude persons from the jury which convicted him on account of their race—in this case white." MT, July 3, 1991, at 23–24.[1] This memorandum opinion and order serves to memorialize the

Court's findings and conclusions as stated on the record on July 3, 1991, concerning the pending issue.

The Court finds:

1. Petitioner is white. The object of his wrath was black. The crime and the trial contained severe racial elements.

2. In 1982, the percentage of black residents in Detroit was approximately sixty-three percent (63%).

3. The jury, as impaneled, consisted of fourteen (14) persons. Eleven (11) of these persons were black, and three (3) of these persons were white. The percentage of blacks on the jury, as impaneled, was seventy-eight and one-half percent (78.5%).

4. The prosecutor had forty-five (45) peremptory challenges. The prosecutor exercised twenty-one (21) peremptory challenges. Nineteen (19) whites were excused by the prosecutor peremptorily; two (2) blacks were excused by the prosecutor peremptorily. The prosecutor had twenty-four (24) peremptory challenges which he did not use.

5. Petitioner had twenty (20) peremptory challenges. Petitioner excused fifteen (15) black persons and five (5) white persons.

6. The two codefendants each had twenty (20) peremptory challenges. One codefendant excused seventeen (17) black persons and three (3) white persons; a second codefendant excused seventeen (17) black persons and three (3) white persons.

7. The racial composition of the venire as brought to the courtroom is unknown. Presumably, it mirrored the racial mix of the City of Detroit.

8. The trial court put the question as follows:

Have defendants been able to establish a *prima facie* case of purposeful discrimination by the prosecution in the exercise of

---

14. As is customary in habeas corpus, the local prosecutor prosecutes and then defends the result on direct appeal, and the Attorney General defends in habeas corpus. If there is a retrial, the local prosecutor has the responsibility in the case. To avoid this form of bifurcated responsi-

bility, the Wayne County Prosecutor was invited to participate in this proceeding; he declined.

1. MT refers to the transcript of oral arguments on petitioner's motion for summary judgment held on July 3, 1991.

peremptory challenges excusing white jurors and, if so, to shift the burden to the prosecution to articulate a neutral explanation of its use of such peremptory challenges.

9. The trial court found:

(a) The venire and jury represented a cross-section of the racial mix of the City of Detroit;

(b) The case involved racial elements;

(c) It took ten (10) days to select a jury;

(d) Racial attitudes were a factor in the *voir dire;*

(e) White and black venire persons responded similarly;

(f) The prosecutor was a competent and fair-minded lawyer. Nothing in the prosecutor's demeanor or manner suggested that he exercised challenges solely on account of race; and

(g) The Wayne County Prosecutor's Office is fair-minded and nondiscriminatory.

10. The trial court found after an evaluation of all relevant circumstances and the full range of explanatory factors, that the defendants were unable to establish a *prima facie* case of purposeful discrimination by the prosecution in the exercise of peremptory challenges against white jurors.

11. The Michigan Court of Appeals twice reviewed the case, once before the trial court's *Batson* hearing, and once after the hearing. In its decision before the trial court's *Batson* hearing, the Court of Appeals stated more or less that three (3) white jurors remained after the prosecutor approved the jury, and that he had twenty-four (24) peremptory challenges remaining. Continuing, the Court of Appeals concluded that (1) statistics indicated race as a factor; (2) the jury closely approximated the racial composition of the community; and (3) the decision was essentially factual and one for the trial court, and because the trial court had overruled the *Batson* challenge initially, it (the Court of Appeals) had no reason to reverse.

12. On remand, the Court of Appeals said that (1) the mere fact that the prosecutor excluded blacks is insufficient to make out a *prima facie* case; (2) the fact that the prosecutor did not remove all whites is strong evidence of an absence of discrimination; (3) under the circumstances, the prosecutor is not required to come forth with a neutral explanation; (4) the prosecutor's statement that the defendants excused forty-nine (49) blacks peremptorily did not support an inference of discrimination given the deference to trial judge's findings; and (5) it was a fact question, and the trial judge, who found no purposeful discrimination, would not be reversed.

Based on these findings, this Court finds no support in the record for the trial court's conclusion that the jury represented a cross-section of the racial mix of the City of Detroit. Indeed, as noted above, in 1982 the racial mix of the City of Detroit was approximately sixty-three percent (63%) black and thirty-seven percent (37%) white. The racial composition of the jury as impaneled was seventy-eight and one-half percent (78.5%) black and twenty-one and one-half percent (21.5%) white. The prosecutor exercised ninety percent (90%) of his challenges towards whites, and ten percent (10%) of his challenges towards blacks.

These statistics lead the Court to conclude that petitioner has established a *prima facie* case of purposeful discrimination. Consequently, the State is obligated to provide a neutral explanation for the peremptory challenges against white members of the venire. *See Batson v. Kentucky*, 476 U.S. at 97, 106 S.Ct. at 1723. To provide an opportunity for the prosecutor to articulate a race-neutral explanation for striking the jurors in question, the Court has scheduled an evidentiary hearing for Tuesday, August 6, 1991, at 2:00 p.m.

Respondent's attorney contends in her prehearing brief based on *Hernandez v. New York*, 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), that the demeanor and credibility of the prosecutor are paramount at this stage. Counsel argues that she should be permitted to address at the evidentiary hearing the issue of the prosecutor's credibility and state of mind during *voir dire.* Counsel further contends that

the trial judge's findings of credibility are now crucial and relevant to this Court's determination of the case.

The Court is not persuaded by this argument. It is the credibility of the prosecutor's explanations for his peremptory strikes that is important at this stage, not the credibility of the prosecutor himself. *See Hernandez v. New York*, 500 U.S. at ——, ——, 111 S.Ct. at 1869, 1870 (noting on page 11, that "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral *explanation* for a peremptory challenge should be believed", and further noting on page 13 that "[t]he credibility of the prosecutor's *explanation* goes to the heart of the equal protection analysis....") (emphasis added); *see also United States v. Alvarado*, 923 F.2d 253, 256 (2nd Cir.1991) (discussing assessment of the credibility of the prosecutor's proffered explanations). Accordingly, the Court is of the view that the reputation of the prosecutor is irrelevant. What is important is a race-neutral explanation of why each of the persons named in Exhibit A was peremptorily excused.[2]

> (s)Avern Cohn
> Avern Cohn
> United States District Judge

DATED: Aug. 06, 1991

## EXHIBIT A

1. Abbott, Martha
2. Bartley, Michael
3. English, Beverly
4. Fisher, Lontana
5. Hale (?), Sue
6. Hilliard, Mr.
7. Hupford, Martha
8. Klersinger, John
9. Kozemko, Nancy
10. Mack, James
11. Mayo, Emma
12. McFarland, Mary

13. Nelson, Mona
14. Nichols, Lucas
15. Pierce, Wayne
16. Potes, David
17. Price, William
18. Renwick, John
19. Rezzonica, Lisa
20. Stevens, Grant
21. Varilod, Douglas
22. Violet, Myrna

## APPENDIX B

## MEMORANDUM OPINION AND ORDER

Petitioners, who are presently confined in state correctional institutions, have filed petitions for the writ of habeas corpus under 28 U.S.C. § 2254. In 1982, a jury in Recorder's Court for the City of Detroit, Michigan found petitioners and one other codefendant guilty of conspiracy to commit murder in the first degree and related criminal acts.

Petitioners are white, and the complaining witness at their trial was black. Petitioners have alleged, in part, that they were deprived of their rights to an impartial jury and equal protection of the law under the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, petitioners complain that the prosecution exercised nineteen (19) of twenty-one (21) peremptory challenges against white venirepersons. Petitioners rely on *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), in which the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."

This matter is currently before the Court on respondents' motion to dismiss the peti-

---

**2.** Exhibit A is a list of what the Court believes are the names of the venire persons peremptorily excused. While the parties seem to agree that the prosecutor excused twenty-one (21) of the venire persons, the Court's collation suggests twenty-two (22).

tions for lack of standing.[1] For the reasons that follow, the motion will be denied.

## Discussion

### I. *Retroactivity of Batson*

Initially, the Court must determine whether *Batson* may be applied retroactively to petitioners' case. The Supreme Court in *Allen v. Hardy,* 478 U.S. 255, 257–258, 261, 106 S.Ct. 2878, 2879–80, 2881, 92 L.Ed.2d 199 (1986), held that the rule in *Batson* should not be applied retroactively on collateral review of convictions that became final before the opinion in *Batson* was announced. The Supreme Court expressed no view on whether the "decision in *Batson* should be applied to cases that were pending on direct appeal" when *Batson* was announced. *Id.* 478 U.S. at 258 n. 1, 106 S.Ct. at 2880 n. 1. In *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), the Supreme Court addressed that question and held that *Batson* may be applied retroactively to cases pending on direct review or not yet final when *Batson* was decided. "Final" means the judgment of conviction has been rendered, the availability of appeal has been exhausted, and the time to petition for certiorari has elapsed. *Allen v. Hardy,* 478 U.S. at 258 n. 1, 106 S.Ct. at 2880 n. 1 (quoting *Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965)).

The Supreme Court issued its decision in *Batson* on April 30, 1986. At that time, petitioners' case was pending on direct review before the Michigan Court of Appeals[2] and therefore was not yet "final."

*Allen* and *Griffith* were decided before the Supreme Court provided an analytical framework for retroactivity of "new rules" in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The petitioner in *Teague* attempted to benefit from the rule in *Batson* on collateral review even though his conviction had become final before the decision in *Batson.* The Supreme Court, however, held that *Allen* prevented the petitioner from claiming the benefit of *Batson.* The Supreme Court's reliance on *Allen* leads this Court to believe that both *Allen* and *Griffith* remain dispositive on the question of the retroactivity of *Batson.* Therefore, even if *Batson* is a new rule which generally does not fall within either exception to new rules, *see Williams v. Chrans,* 945 F.2d 926, 943–946 (7th Cir. 1991), petitioners remain entitled to the retroactive application of *Batson.*

### II. *Standing*

Standing is also a threshold question. *United States v. Van,* 931 F.2d 384, 387 (6th Cir.1991). The federal Constitution requires that federal jurisdiction be limited to 'cases' or 'controversies.' One aspect of that limitation is standing, which requires that a party have an actual injury or claim. In evaluating a party's standing the court must determine 'whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'

*Id.* (citations omitted) (emphasis in original). Stated differently, "[t]o have standing, a party must be aggrieved by the judicial action from which it appeals." *Vogel v. City of Cincinnati,* 959 F.2d 594, 599 (6th Cir.1992) (quoting *Vanguards of Cleveland v. City of Cleveland,* 753 F.2d 479, 484 (6th Cir.1985)). *See also Lujan v. Defenders of Wildlife,* — U.S. —, —, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) (defining the elements of standing as (1) injury in fact, (2) a causal connection

---

**1.** At oral arguments in this case, the Court determined that petitioners had stated a *prima facie* case under *Batson. See* Memorandum Opinion and Order dated August 6, 1991. The Court subsequently held an evidentiary hearing to provide the State with an opportunity to establish race-neutral reasons for the assistant prosecutor's peremptory challenges. The Court presently has under advisement the question of whether petitioners have carried their burden of proving purposeful discrimination. In the interim, the Court is disposing of the pending motion to dismiss filed on April 21, 1992.

**2.** *See People v. Echlin,* No. 81885; *People v. Bishop,* No. 82407 (July 3, 1986).

between the injury and the conduct complained of, and (3) the likelihood that the injury will be redressed by a favorable decision) (citations omitted).

Respondents argue that petitioners have no standing to raise the excluded white jurors' equal protection claims because *Batson* protects only the rights of racial minorities in the petit jury process. Petitioners simply respond that the Equal Protection Clause of the Fourteenth Amendment prohibits a state prosecutor from using peremptory challenges to exclude venirepersons based on the race of the excluded persons.

> The following principles are instructive: Discriminatory practices in jury selection 'cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.' *Peters v. Kiff*, 407 U.S. 493, 502–503 [92 S.Ct. 2163, 2168–69, 33 L.Ed.2d 83] (1972). The exclusion of cognizable groups from jury service limits community participation in the administration of the criminal justice system— participation which is 'critical to public confidence in the fairness' of the system. *Taylor v. Louisiana*, 419 U.S. 522, 530 [95 S.Ct. 692, 698, 42 L.Ed.2d 690] (1975).

*United States v. De Gross*, 960 F.2d 1433, 1436 (9th Cir.1992) (*en banc*).

> Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.

*Taylor v. Louisiana*, 419 U.S. at 530, 95 S.Ct. at 698. In short,

> race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges.

*Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991).

A defendant may establish a *prima facie* case of purposeful discrimination during jury selection by showing, in part, that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Petitioners are members of a cognizable racial group. *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 64 (3rd Cir.1989); *see also University of California Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Additionally, petitioners challenge the removal from the venire of members of their own race.

The arguable detriment to petitioners is twofold. First, some members of their race were excluded from community participation in the administration of the criminal justice system. *See United States v. De Gross*, 960 F.2d at 1436. Second, petitioners arguably were deprived of their right to be tried by a jury chosen pursuant to nondiscriminatory criteria. *See id.* at 1438. Petitioners, therefore, have standing.[3]

Respondents argue alternatively that, if the Court decides petitioners have standing, the Court's decision would constitute a new rule. Respondents assert that new rules, including the rule of *Powers, supra*, may not be applied retroactively on habeas review unless they fall within two exceptions. Respondents contend that the proposed new rule here does not fall within either exception.

Like defendant Batson, petitioners are directly asserting their own rights and the rights of members of their race. *See Bakke*, 438 U.S. at 289, 98 S.Ct. at 2747 (holding that the rights established under the Fourteenth Amendment are personal rights) (citations omitted); *see also Splunge v. Clark*, 960 F.2d 705, 709 (7th Cir.1992) (finding that "exclusion of potential jurors on the basis of race causes deadly serious harm to the excluded citizen, the defendant, and our system of justice as a whole"). The issue of standing is to be decided under *Batson*, not under the third-

---

**3.** The Court notes, incidentally, that the State conceded in its answers to Echlin's petition and motion for summary judgment, in the stipulated order of July 15, 1991, and during the evidentiary hearing on February 19, 1992, that Echlin had standing to raise a *Batson* claim.

party analysis of *Powers*. Consequently, there is no need to consider whether *Powers* is a new rule. *United States v. Ferguson*, 935 F.2d 862, 864 n. 1 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992).

Respondents also contend that, if petitioners have standing, the historical use of peremptory challenges will be eradicated and future *voir dire* proceedings will become trials in themselves. The Court disagrees. Peremptory challenges have a legitimate place in jury trials. *Batson* itself noted, for example, that "a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried...." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719. The proscribed conduct is challenging "potential jurors solely on account of their race" or on the assumption that they will be unable impartially to consider the State's case against a member of their race. *Id.* (internal citation omitted).

Furthermore, the Supreme Court has expressed confidence in the ability of trial courts "to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice." *Powers*, —— U.S. at ——, 111 S.Ct. at 1374. Respondents' argument about the historical use of peremptory challenges and the nature of *voir dire* proceedings has no merit.

### Conclusion

Petitioners have standing to assert their claim under *Batson*. "The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal." *Bakke*, 438 U.S. at 289–290, 98 S.Ct. at 2748. Accordingly, the motion to dismiss is DENIED.

(s)Avern Cohn
Avern Cohn
United States District Judge

DATED: <u>July 10, 1992</u>

APPENDIX C

### SECOND
### AMENDED
### GLOBAL CHARACTERISTICS

**No. 1** Single/Unmarried.....................................................
**No. 2** Proximity to Area.....................................................
**No. 3** Relation to Police.....................................................
**No. 4** Negative Feelings Re: Klan.............................................
**No. 5** No Opinion Re: Klan ..................................................
**No. 6** Employed .............................................................
**No. 7** Unemployed...........................................................
**No. 8** Spouse's/Relative's Occupation ........................................
**No. 9** Membership/Religion .................................................
**No. 10** Attitude Re: Gun Control .............................................
**No. 11** Responsiveness to Questioning .........................................
**No. 12** Prior Jury Experience .................................................
**No. 13** Personal Experience With Crime .......................................
**No. 14** Knowledge Re: Newspaper Article......................................
**No. 15** Opinionated/Stubborn.................................................
**No. 16** Unnecessary to Know Background To Judge Credibility...................

## GLOBAL CHARACTERISTIC No. 1
### Single/Unmarried

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| McFarland, Mary (WH) | 5/1159 | : | Breidenstein, Julia (WH) | 5/1157 |
| Rezzonica, Lisa (WH) | 3/709 | : | Bright, Rennell (BL) | 7/271 |
| | | : | Hare, Sandra (BL) | 5/1178 |

## GLOBAL CHARACTERISTIC No. 2
### Proximity to Area

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Renwick, John (WH) | 4/978 | : | Bell, Doris (BL) | 8/1547 |
| Varilone, Doug (WH) | 5/1150 | : | Mitchell, Beatrice (BL) | 7/1529 |
| Rezzonica, Lisa (WH) | 3/723–724 | : | Peters, Karen (BL) | 7/83 |
| Mack, James (BL) | 4/767–768 | : | Warren, Sandra (BL) | 8/1592 |
| Hale, Sue (WH) | 8/1529 | : | | |
| English, Beverly (WH) | 8/1563 | : | | |

## GLOBAL CHARACTERISTIC No. 3
### Relation to Police

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Pates, David (WH) | 2/427 | : | Bright, Rennell (BL) | 7/273 |
| Hale, Sue (WH) | 8/1050 | : | Obgurn, Maxine (BL) | 7/224 |
| | | : | Warren, Sandra (BL) | 3/1573, 1596 |

## GLOBAL CHARACTERISTIC No. 4
### Negative Feelings Re: Klan

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Renwick, John (WH) | 5/1018–1019 | : | Barnett, Ernestine (BL) | 5/1061 |
| Rezzonica, Lisa (WH) | 3/710 | : | Bright, Rennell (BL) | 7/271 |
| Pierce, Wayne (WH) | 3/189 | : | Hare, Sandra (BL) | 5/1177 |
| Abbott, Martha (WH) | 3/223, 239 | : | Kennerly, Rene (BL) | 5/1174 |
| Violet, Myrna (WH) | 7/305 | : | Mitchell, Beatrice (BL) | 8/1503 |
| Mahieu, Emma (WH) | 7/312 | : | Obgurn, Maxine (BL) | 7/224 |
| Hale, Sue (WH) | 8/1509 | : | Peters, Karen (BL) | 7/81 |
| | | : | Warren, Sandra (BL) | 8/1587 |

## GLOBAL CHARACTERISTIC No. 5
### No Opinion Re: Klan

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Klessinger, John (WH) | 4/961, 964 | : | Bell, Doris (BL) | 8/1531–1538, 1543 |
| Varilone, Doug (WH) | 5/1193 | : | Gladney, Deborah (BL) | 7/307, 1308 |
| McFarland, Mary (WH) | 5/1182 | : | Holloway, Dempsey (BL) | 6/1423 |
| Nelson, Mona (WH) | 6/1362 | : | Nothstine, Grace (WH) | 4/885 |
| Hilliard, R. (WH) | 4/981, 982 | : | Warren, Sandra (BL) | 8/1576, 1584 |
| Pierce, Wayne (WH) | 7/181 | : | | |
| Mack, James (BL) | 4/766 | : | | |
| English, Beverly (WH) | 8/1558–1559, 1564 | : | | |

## GLOBAL CHARACTERISTIC No. 6
### Employed

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Pates, David (WH) | 2/427 | : | Bell, Doris (BL) | 6/1538 |
| Varilone, Doug (WH) | 5/1159 | : | Breidenstein, Julia (WH) | 5/1157 |
| Rezzonica, Lisa (WH) | 3/709 | : | Bright, Rennell (BL) | 7/271 |
| English, Beverly (WH) | 8/1558 | : | Mitchell, Beatrice (BL) | 8/1523 |
| McFarland, Mary (WH) | 5/1159 | : | Warren, Sandra (BL) | 8/1572–1573 |
| | | : | Barnett, Ernestine (BL) | 5/1061 |
| Hale, Sue (WH) | 8/1508 | : | Nothstine, Grace (WH) | 4/886 |

## GLOBAL CHARACTERISTIC No. 7
### Unemployed

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Nichols, Lucas (WH) | 2/544 | : | Gladney, Deborah (BL) | 7/301 |
| Klessinger, John (WH) | 4/958 | : | Holloway, Dempsey (BL) | 6/1428 |
| | | : | Peters, Karen (BL) | 7/79 |

## GLOBAL CHARACTERISTIC No. 8
### Spouse's/Relative's Occupation

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Nichols, Lucas (WH) | 2/434 | : | | |
| Stevens, Grant (WH) | 2/417 | : | | |
| Klessinger, John (WH) | 4/958 | : | Barrera, Jeannie (BL) | 4/927 |
| | | : | Breidenstein, Julia (WH) | 5/1157 |
| Varilone, Doug (WH) | 5/1160 | : | Nothstine, Grace (WH) | 4/886 |

## GLOBAL CHARACTERISTIC No. 9
### Membership/Religion

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Klessinger, John (WH) | 4/962 | : | Breidenstein, Julia (WH) | 5/1206 |
| McFarland, Mary (WH) | 4/1183–1184 | : | Hare, Sandra (BL) | 5/1208 |

## GLOBAL CHARACTERISTIC No. 10
### Attitude Re: Gun Control

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Klessinger, John (WH) | 4/966 | : | Obgurn, Maxine (BL) | 7/233 |
| Varilone, Doug (WH) | 5/1193 | : | | |
| Rezzonica, Lisa (WH) | 3/719 | : | | |
| Mack, James (BL) | 4/769 | : | | |
| Hale, Sue (WH) | 8/1512–1513 | : | | |

## GLOBAL CHARACTERISTIC No. 11
### Responsiveness to Questioning

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Pates, David (WH) | * | : | Gladney, Deborah (BL) | 7/301– 303, 307 |
| Renwick, John (WH) | 5/1018– 1019 | : | | |
| Rezzonica, Lisa (WH) | * | : | Mitchell, Beatrice (BL) | 7/1520 |
| Nelson, Mona (WH) | * | : | | |
| Hilliard, Richard (WH) | * | : | | |
| Pierce, Wayne (WH) | * | : | | |

## GLOBAL CHARACTERISTIC No. 12
### Prior Jury Experience

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Varilone, Doug (WH) | 5/1149 | : | Barnett, Ernestine (BL) | 5/1003, 1063 |
| | | : | Hare, Sandra (BL) | 5/1148 |
| | | : | Obgurn, Maxine (BL) | 7/234 |
| | | : | Peters, Karen (BL) | 7/80 |

## GLOBAL CHARACTERISTIC No. 13
### Personal Experience With Crime

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Nelson, Mona (WH) | 4/1368 | : | Breidenstein, Julia (WH) | 5/1171 |
| Kozemko, Nancy (WH) | 4/798, 799 | : | Kennerly, Rene (BL) | 5/1173 |
| Hale, Sue (WH) | 8/1511 | : | Nothstine, Grace (WH) | 4/884 |
| | | : | Warren, Sandra (BL) | 8/1579– 1580 |

## GLOBAL CHARACTERISTIC No. 14
### Knowledge Re: Newspaper Article

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Klessinger, John (WH) | 4/960 | : | Barnett, Ernestine (BL) | 7/53–55 |
| Pierce, Wayne (WH) | 4/181, 200 | : | Mitchell, Beatrice (BL) | 8/1530 |
| Abbott, Martha (WH) | 4/230–231, | : | Peters, Karen (BL) | 7/86 |
| | | : | | 239 |
| English, Beverly (WH) | 8/1563 | : | | |

## GLOBAL CHARACTERISTIC No. 15
### Opinionated/Stubborn

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Rezzonica, Lisa (WH) | 3/714 | : | Barrera, Jeannie (BL) | 4/937 |
| Hale, Sue (WH) | * | : | Gladney, Deborah (BL) | 7/302 |
| | | : | Hare, Sandra (BL) | 5/1178 |
| | | : | Mitchell, Beatrice (BL) | 7/1519 |
| | | : | Warren, Sandra (BL) | 8/1577 |

## GLOBAL CHARACTERISTIC No. 16
### Unnecessary to Know
### Background To Judge Credibility

| STRICKEN VENIREPERSON | VOL/ PAGE | : | EMPANELLED JUROR | VOL/ PAGE |
|---|---|---|---|---|
| Rezzonica, Lisa (WH) | 3/716 | : | Bell, Doris (BL) | 8/1545 |
| Nelson, Mona (WH) | 4/1363 | : | Warren, Sandra (BL) | 8/1588–1589 |
| Hale, Sue (WH) | 8/1521 | : | | |

APPENDIX D

**JURY CHART**

RECORDER'S COURT
for the
CITY OF DETROIT

FILE NO. _____ DATE _____

OFFENSE _____

PEOPLE OF THE STATE OF MICHIGAN

–vs–

DEFT. _____

DEFENSE _____

PROSECUTOR _____

JUDGE GERALDINE B. FORD

**JURY CHART**
**RECORDER'S COURT**
for the
**CITY OF DETROIT** ②

FILE NO. _____ DATE _____

OFFENSE _____

PEOPLE OF THE STATE OF MICHIGAN

-vs-

DEFT. _____

DEFENSE _____

PROSECUTOR _____

JUDGE GERALDINE B. FORD

| NO | NAME (1) | NO | NAME | NO | NAME (5) | NO | NAME (6) | NO | NAME (7) | NO | NAME (8) |
|----|----------|----|------|----|----------|----|----------|----|----------|----|----------|
| 1 | Richard Richardson exc'd | 54 | Matthew Nimno (w) 2ndChallenge | 13 | Audrey McKissic (w) McDonough | 44 | Jesse Hendricks Howard | 47 | Johnnie Hicks exc'd | 300 | Lawli Walker exc'd |
| 13 | Ernest Bright | 74 | Mona Nelson (w) w...Chall | 7 | Johnnie Blossom McDonough | 179 | Mary Trussel Howard | 20 | Elsie Sloggin (w) exc'd | 95 | Beverly Engles Wogozma (Tp) |
| | | 2 | Arthur Andrews 2ndChallenge | 19 | Betty Boes (w) Howard | 136 | Arnella Freeman Howard | 62 | Suzanne Kew (w) exc'd | 197 | Sandra Wiseman |
| | | 64 | Karen Petrie | 12 | Virginia Bradley (w) Howard | 128 | William Champion exc'd | 34 | William Syron Zimmerman | | |
| | | | | 32 | Sandra Goins Zuckerhoff | 153 | William Lockhart Zuckerhoff | 99 | Jesse McIntyre Zimmerman (w) | | |
| | | | | 51 | Dempsey Helfrons exc'd | | | | | | |

| NO | NAME (9) | NO | NAME (10) | NO | NAME (11) | NO | NAME (12) |
|----|----------|----|-----------|----|-----------|----|-----------|
| 22 | Dorothy Houston Howard | 119 | Willie Mae Osborne exc'd | | | | |
| 141 | Dorothy Westphal (m) Wogozma | 81 | James Mark Jr Wogozma | | | | |
| 140 | Herman Streuknant Zuckerhoff | 109 | Rosemary Kidron McDonough | | | | |
| 58 | Esther Snkusic (w) exc'd | 169 | Emma McKissic (w) | | | | |
| 55 | Maxwell Hunt (m) Zuckerhoff | 177 | Irene Surrers exc'd | | | | |

Column with numbered entries:
| NO | NAME |
|----|------|
| 30 | John Graham Howard |
| 49 | Robert Hilliard (w) Wogozma |
| 113 | Dorothy Harris McDonough |
| 145 | Adella Jackson Zuckerhoff |
| 147 | Lottie Hill exc'd |

537

**JURY CHART**
**RECORDER'S COURT**
**for the**
**CITY OF DETROIT**

DATE _____

FILE NO. _____

DEFENSE _____

PEOPLE OF THE STATE OF MICHIGAN

—vs—

DEFT. _____

DEFENSE _____

PROSECUTOR _____

JUDGE GERALDINE B. FORD

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **1** | | | **4** |
| | | | | |

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **2** | | | **3** |
| 152 | William Kendall 1451 | | | |
| 111 | Seth White 2 vacancies 1 | | | |
| 85 | Maxsem Osburn | | | |

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **5** | | | **6** |
| | | | 151 | William Long (w) excuse |
| | | | 165 | Wayne Pierce excuse McDonald |
| | | | 109 | Ernest Hutchins McDonald |
| | | | 117 | Perry Wirtz Hammer |
| | | | 60 | Henrietta Judson Hammer |
| | | | 71 | Emilia Long (w) excuse |

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **9** | | | **10** |
| 152 | Sarah Logan excuse McDonald | | 30 | Lorherie Fisher excuse McDonald |
| 146 | Evelyn Jackson McDonald | | 123 | Barbara Mitchell |
| 180 | Chet Tample excuse | | | |
| 123 | Leon Becker excuse | | | |
| 170 | John Pershing Robert McDonald out | | | |

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **7** | | | **8** |
| | | | | |

| NO | NAME | | NO | NAME |
|---|---|---|---|---|
| | **11** | | | **12** |
| | | | | |

538

## JURY CHART
### RECORDER'S COURT
### for the
### CITY OF DETROIT

FILE NO. _____ DATE _____

OFFENSE _____

PEOPLE OF THE STATE OF MICHIGAN

–vs–

DEFT. _____

DEFENSE _____

PROSECUTOR _____

JUDGE **GERALDINE B. FORD**

| NO. | 5 NAME | NO. | 6 NAME |
|---|---|---|---|
| | | 146 | Samuel Post (w/s) |
| | | 106 | Wayne Vidat (w) (excuse) |
| | | 174 | Willie Scott (excuse) |
| | | 96 | Brendon Hopper (w) (excuse) |
| | | 50 | Sue Hale (w) WOOLEYMA |
| | | 134 | Doris Bill |

| NO. | 9 NAME | NO. | 10 NAME |
|---|---|---|---|
| 134 | Constance Deming (w)(excuse) | | |
| 119 | Marsha Abbott (w) (excuse) | 33 | Deborah Flesher |
| 102 | William Price (w) (excuse) | 123 | Barbara Mitchell |
| 14 | Syril Brickstone (w) (excuse) | | |
| 52 | William Nicholson (excuse) | | |